FILED
United States Court of Appeals
Tenth Circuit

October 2, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WALTER BROWN EWING,

    Defendant - Appellant.

No. 20-5005
(D.C. No. 4:05-CR-00068-CVE-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **EID**, Circuit Judges.
_____

After Walter Ewing admitted to violating conditions of his supervised release, the district court revoked his supervised release and ordered him to serve eight months in prison followed by fourteen months of supervised release. He appeals, raising two arguments for the first time. First, he argues that the district court's revocation proceedings violated his Fifth and Sixth Amendment rights under

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Second, he argues that 18 U.S.C. § 3583(g) ("subsection (g)") is unconstitutional. We affirm.

## I. Procedural Background

In 2005, Mr. Ewing pled guilty to one count of conspiracy (18 U.S.C. § 371) and one count of possession of stolen mail (18 U.S.C. § 1708). The district court sentenced him to prison for the five-year statutory maximum on each count and ordered that the two five-year terms be served consecutively. *See* 18 U.S.C. §§ 371, 1708. After finishing the prison terms in 2014, he began serving concurrent three-year terms of supervised release. In 2016, Mr. Ewing stipulated that he had violated conditions of his supervised release, and the district court then ordered him to serve concurrent fourteen-month prison terms followed by twenty-two months of supervised release.

The revocation proceedings underlying this appeal began in 2019, when the probation department alleged that Mr. Ewing violated the conditions of his supervised release by testing positive several times for methamphetamine, failing to submit to drug tests as directed, and submitting a diluted sample as well as a "substituted" sample for drug testing. R., Vol. I at 191–92. The district court advised Mr. Ewing that he had a right to a hearing in which the court could make findings on the allegations using the preponderance-of-the-evidence standard. Mr. Ewing declined the hearing, opting instead to stipulate that the violations occurred. The district court then found that Mr. Ewing violated the supervised-

2

release conditions and later sentenced him to serve concurrent eight-month prison terms followed by fourteen months of supervised release.

## II.  Legal Background

### A.  Supervised Release and Revocation

A district court imposing a prison sentence may (and sometimes must) require the defendant to serve a term of supervised release after the defendant's release from prison.  18 U.S.C. § 3583(a).  The maximum term of supervised release that the court may impose depends on the severity of the crime of conviction.  18 U.S.C. § 3583(b).  Mr. Ewing's convictions were for Class D felonies, which meant the court could impose up to three years of supervised release.  *See* 18 U.S.C. §§ 3559(a)(4), 3583(b).  While on supervised release, a defendant must comply with certain conditions; courts must impose some conditions and they have discretion to impose others.  18 U.S.C. § 3583(d).

Violations of supervised-release conditions may lead to revocation proceedings.  *See* U.S. Sentencing Guidelines Manual § 7B1.2 (U.S. Sentencing Comm'n 2020).  If a district court finds by a preponderance of the evidence that a defendant has violated a condition of supervised release, it typically has discretion to revoke supervised release and impose incarceration, subject to limits on the amount of incarceration tied to the severity of the crime of conviction.  *See* 18 U.S.C. § 3583(e) ("subsection (e)").  But subsection (g) removes that discretion under some circumstances, requiring revocation and incarceration if the defendant (1) unlawfully possesses a controlled substance; (2) violates federal law or a supervised-release

3

condition by possessing a firearm; (3) refuses to comply with a supervised-release condition requiring drug testing; or (4) tests positive for illegal controlled substances more than three times over the course of one year.[1] 18 U.S.C. § 3583(g). Although subsection (g) requires revocation in those cases, it also limits the amount of incarceration that the court may impose based on the severity of the crime of conviction; for class D felonies, incarceration may not exceed two years. 18 U.S.C. §§ 3583(e)(3), (g).

B. Revocation Proceedings and the Fifth and Sixth Amendments

"The Sixth Amendment provides that those accused of a crime have the right to a trial by an impartial jury. This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 104 (2013) (internal quotation marks omitted). Any fact, other than the fact of a prior conviction, "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Similarly, "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 570 U.S. at 103.

But the Supreme Court has attributed "postrevocation penalties to the original conviction." *Johnson v. United States*, 529 U.S. 694, 701 (2000). So in response to a

---

[1] An exception to subsection (g)'s mandatory revocation may exist for "a defendant who fails a drug test." 18 U.S.C. § 3583(d). We need not decide if this exception applies in this case because it would not affect the outcome.

4

challenge based on *Apprendi* and its progeny to 18 U.S.C. § 3583(e)(3)—which allows district courts to revoke supervised release and impose prison after finding a violation by a preponderance of the evidence—we have held that a "defendant in a supervised release revocation proceeding is not entitled to indictment by a grand jury, to a jury trial, or to be found 'guilty' of violating the terms of his supervised release beyond a reasonable doubt." *United States v. Cordova*, 461 F.3d 1184, 1190 (10th Cir. 2006).

The Supreme Court recently found unconstitutional a supervised-release provision not at issue in this case, 18 U.S.C. § 3583(k) ("subsection (k)"). *United States v. Haymond*, 139 S. Ct. 2369 (2019) (*Haymond II*). Under subsection (k), if a district court finds by a preponderance of the evidence that a defendant (who must register as a sex offender) committed one of several enumerated crimes, it must revoke supervised release and "impose an additional prison term of at least five years and up to life without regard to the length of the prison term authorized for the defendant's initial crime of conviction." *Haymond II*, 139 S. Ct. at 2374 (plurality opinion).

Although five Justices in *Haymond II* agreed that subsection (k) is unconstitutional, not all five shared the same reasoning. Writing for a four-Justice plurality, Justice Gorsuch concluded that subsection (k) is unconstitutional under *Alleyne* because it requires "a substantial increase in the minimum sentence to which a defendant may be exposed based only on judge-found facts under a preponderance standard." *Id.* at 2382. Justice Gorsuch explicitly did not decide whether

5

subsection (k) implicates *Apprendi*, explicitly did not decide whether subsection (e) is consistent with *Apprendi*, and explicitly did not express a view on subsection (g). *Id.* at 2382 n.7. Justice Breyer concurred in the judgment. Although he "would not transplant the *Apprendi* line of cases to the supervised-release context," *id.* at 2385, he nevertheless agreed that subsection (k) is unconstitutional, citing the combination of three of its aspects:

> *First*, § 3583(k) applies only when a defendant commits a discrete set of federal criminal offenses specified in the statute. *Second*, § 3583(k) takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long. *Third*, § 3583(k) limits the judge's discretion in a particular manner: by imposing a mandatory minimum term of imprisonment of not less than 5 years upon a judge's finding that a defendant has committed any listed criminal offense.

*Id.* at 2386 (internal quotation marks omitted).

In their discussions of *Haymond II*, the parties dispute whether, and to what extent, Justice Breyer's concurrence represents *Haymond II*'s holding. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation marks omitted). The *Marks* rule yields a determinate holding, however, "only when one opinion is a logical subset of other, broader opinions." *United States v. Carrizales-Toledo*, 454 F.3d 1142, 1151 (10th Cir. 2006) (internal quotation marks omitted). "When the plurality and concurring opinions take distinct approaches, and there is no narrowest

6

opinion representing the common denominator of the Court's reasoning, then *Marks* becomes problematic." *Id.* (internal quotation marks omitted). And we "do not apply *Marks* when the various opinions supporting the Court's decision are mutually exclusive." *Id.*

Justice Gorsuch's plurality opinion and Justice Breyer's concurring opinion are not mutually exclusive. Justice Gorsuch opined that Justice Breyer's second and third reasons for his concurrence "amount to the same thing," which Justice Gorsuch agreed "is indeed a problem." *Haymond II*, 139 S. Ct. at 2384 n.9. But he wondered why Justice Breyer's first reason should matter. *Id.* Because Justice Gorsuch's opinion agreed that two of Justice Breyer's reasons revealed a problem with subsection (k) and that his other reason should not matter, Justice Breyer's opinion is narrower than Justice Gorsuch's. We therefore conclude, as have several other opinions, that Justice Breyer's opinion controls. *See id.* at 2386 (Alito, J., dissenting) (stating that the holding "is set out in" Justice Breyer's opinion); *United States v. Garner*, 969 F.3d 550, 552 (5th Cir. 2020); *United States v. Seighman*, 966 F.3d 237, 242 (3d Cir. 2020); *United States v. Coston*, 964 F.3d 289, 295 (4th Cir. 2020); *United States v. Doka*, 955 F.3d 290, 296 (2d Cir. 2020); *United States v. Watters*, 947 F.3d 493, 497 (8th Cir. 2020).

With these principles in mind, we turn to Mr. Ewing's arguments.

7

### III. Analysis

### A. Standard of Review

The parties agree that Mr. Ewing did not raise his arguments in the district court and that, as a result, we should review the arguments for plain error. The plain-error standard requires us to vacate a sentence only if "(1) there is error; (2) that is plain; (3) that affects substantial rights, or in other words, affects the outcome of the proceeding; and (4) substantially affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Chavez*, 723 F.3d 1226, 1232 (10th Cir. 2013). "An error is plain if it is clear or obvious under current, well-settled law. In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) (internal quotation marks omitted).

### B. Mr. Ewing's *Apprendi* Argument

Mr. Ewing contends that the district court violated his Fifth and Sixth Amendment rights under *Apprendi* by conducting his revocation proceedings according to 18 U.S.C. § 3583, which permitted the court to impose prison terms that, combined with his prior prison sentences, exceed the statutory maximum for his offenses of conviction without requiring a jury to find violations beyond a reasonable doubt. In his opening brief, Mr. Ewing leans on *Haymond II*, asserting that his argument "is consistent with the plurality's opinion." Aplt. Opening Br. at 15. In his reply brief, however, he concedes that *Haymond II* contains no binding precedent

8

establishing that *Apprendi* applies to supervised-release revocations. Aplt. Reply Br. at 10. In the end, Mr. Ewing has not presented any binding authority holding that *Apprendi* applies to revocation proceedings even when, as here, the initial and post-revocation sentences add up to a term that exceeds the statutory maximum term for the crime of conviction. We are left, then, with our precedent declining to apply *Apprendi* to supervised-release proceedings and holding that a defendant in revocation proceedings under 18 U.S.C. § 3583(e)(3) is not entitled to a jury trial or to have violations proved beyond a reasonable doubt. *Cordova*, 461 F.3d at 1186–90.[2] So Mr. Ewing has not shown that the district court committed error at all, much less obvious error, by conducting his revocation proceedings according to 18 U.S.C. § 3583.

## C. Mr. Ewing's Challenge to Subsection (g)

Mr. Ewing contends that subsection (g) is unconstitutional because it required the district court to revoke his supervised release and impose incarceration based on facts not found by a jury beyond a reasonable doubt.

---

[2] To the extent Mr. Ewing argues otherwise, our decision in *United States v. Haymond*, 869 F.3d 1153 (10th Cir. 2017) (*Haymond I*), *vacated by Haymond II*, 139 S. Ct. at 2385, does not give him a path around *Cordova*. For one thing, the Supreme Court vacated our judgment, 139 S. Ct. at 2385, thereby depriving our "opinion of precedential effect," *O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975). And for another, *Haymond I* did not conclude that *Apprendi* governs supervised-release proceedings. *See Haymond I*, 869 F.3d at 1163 (concluding that *Apprendi* and *Alleyne* apply to "criminal prosecutions" while *United States v. Booker*, 543 U.S. 220 (2005), "applies to sentencing").

Applying Justice Breyer's analysis from *Haymond II*, we conclude that Mr. Ewing has not shown plain error because of significant differences between subsection (k) and subsection (g). Although subsection (g) applies to some conduct that amounts to a federal crime—such as possessing a firearm in violation of federal law—in contrast to subsection (k), it does not apply "only when a defendant commits a discrete set of federal criminal offenses." *Haymond II*, 139 S. Ct. at 2386 (Breyer, J., concurring). Moreover, subsection (g) curtails a district court's discretion to impose incarceration to a much smaller degree, and in a different way, than does subsection (k). Subsection (k) requires a prison sentence of at least five years. Subsection (g), however, requires a prison sentence of only one day and limits the prison term based on the seriousness of the crime of conviction. For these reasons, Justice Breyer's analysis of subsection (k) does not make it clear or obvious that subsection (g) is unconstitutional. *See Garner*, 969 F.3d at 553 (holding "that Subsection (g) is not unconstitutional under *Haymond*"); *Seighman*, 966 F.3d at 242–44 (applying Justice Breyer's analysis of subsection (k) and rejecting a constitutional challenge to subsection (g)); *Coston*, 964 F.3d at 296 (rejecting the defendant's plain-error challenge to subsection (g) because it "likely does not meet Justice Breyer's controlling test"). For these reasons, we reject Mr. Ewing's plain-error challenge to subsection (g).

IV. Conclusion

We affirm the district court's judgment.

Entered for the Court


Carolyn B. McHugh
Circuit Judge