**FILED**
United States Court of Appeals
Tenth Circuit

**April 29, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

LAQUAN KYLE DUANE
SHAKESPEARE,

      Defendant - Appellant.

No. 21-8010

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:18-CR-00154-SWS-1)**

---

Robert S. Jackson, Oklahoma City, Oklahoma, for Defendant - Appellant.

Francesco Valentini, Trial Attorney, Appellate Section, Criminal Division, U.S. Department of Justice, Washington D.C. (L. Robert Murray, United States Attorney and Timothy W. Gist, Assistant United States Attorney, District of Wyoming, Lander, Wyoming; Kenneth A. Polite, Jr., Assistant Attorney General, U.S. Department of Justice, Washington, D.C., with him on the briefs), for Plaintiff - Appellee.

---

Before **HARTZ**, **KELLY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

While Laquan Shakespeare was serving the supervised-release portion of his sentence for violating 18 U.S.C. §§ 1153 and 2243(a) (the "2018 conviction"), he sexually assaulted a fourteen-year-old girl. Based on the events underlying that sexual assault, Shakespeare pleaded guilty to violating 18 U.S.C. §§ 1153 and 2244(a)(5) (the "2020 conviction"). Thereafter, the government moved to revoke Shakespeare's supervised release. The district court set a combined (1) sentencing hearing on the 2020 conviction and (2) revocation hearing on Shakespeare's supervised release. At that combined hearing, the district court first sentenced Shakespeare to a term of imprisonment of 293 months on the 2020 conviction. The district court then recessed the completed proceedings relating to the 2020 conviction[1] and turned to the question whether Shakespeare's supervised release on the 2018 conviction should be revoked. Acting pursuant to the provisions of 18 U.S.C. § 3583(k), the district court concluded it was obligated to revoke Shakespeare's supervised release and to impose a mandatory-minimum five-year term of imprisonment. For the first time on appeal, Shakespeare argues the district court's application of § 3583(k) violated (1) his jury-trial rights, as guaranteed by the Fifth and Sixth Amendments; and (2) his Fifth Amendment right to be free of double jeopardy. Shakespeare's arguments are predicated on

---

[1]*Cf. United States v. Varah*, 952 F.2d 1181, 1183 (10th Cir. 1991) ("Final judgment in a criminal case means sentence. The sentence is the judgment." (quotation omitted)).

Justice Breyer's opinion concurring in the judgment in *United States v. Haymond*,
139 S. Ct. 2369 (2019).

Shakespeare has failed to demonstrate the district court committed error, let
alone plain error. The jury-trial-rights aspect of Shakespeare's claim fails
because he admitted all of the facts necessary for the application of § 3583(k).
The Supreme Court has made clear that the *Apprendi/Alleyne* line of cases[2] do not
apply to admitted facts, as the *Haymond* plurality specifically recognized. 139 S.
Ct. at 2377.[3] Nor does the *Apprendi/Alleyne* line apply to the existence of a prior
criminal conviction. *Almendarez-Torres v. United States*, 523 U.S. 224, 247
(1998); *Haymond*, 139 S. Ct. at 2377 & n.3 (plurality opinion) (recognizing
continuing viability of *Almendarez-Torres*). The double-jeopardy aspect of
Shakespeare's claim fails because the Court has explicitly held that revocation
proceedings are part of the punishment for the initial offense, not a new
prosecution. *See Johnson v. United States*, 529 U.S. 694, 700-01 (2000).
Neither the plurality opinion in *Haymond* nor Justice Breyer's concurring opinion
purport to overrule *Johnson*. 139 S. Ct. at 2380 (plurality opinion); *id.* at 2386
(Breyer, J., concurring in the judgment). Shakespeare's reliance on Justice
Breyer's separate opinion in an effort to reach a different result is misplaced. The

---

[2]*See Alleyne v. United States*, 570 U.S. 99 (2013); *Apprendi v. New Jersey*,
530 U.S. 466 (2000).

[3]*See also United States v. Booker*, 543 U.S. 220, 232 (2005); *Blakely v.
Washington*, 542 U.S. 296, 303-04 (2004).

facts underlying Justice Breyer's as-applied *Haymond* analysis are meaningfully distinguishable from the facts at issue here and, importantly, nothing in that analysis supports the conclusion § 3583(k) is unconstitutional as applied to Shakespeare. Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the judgment entered by the district court.[4]

## II. BACKGROUND

In 2018, Laquan Shakespeare pleaded guilty to sexual abuse of a minor, in violation of 18 U.S.C. §§ 1153 and 2243(a) (the "2018 conviction"). He was sentenced to a fifteen-month term of imprisonment, to be followed by a ten-year term of supervised release. As conditions of his supervised release, the court required Shakespeare to not violate any federal, state, or local law; to "comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) [("SORNA")] as directed by the probation officer"; and to not "associate with children under the age of 18 . . . except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense and who has been approved by the Probation Officer."

Shakespeare finished his term of imprisonment on the 2018 conviction and began his term of supervised release in September 2019. On November 15, 2019,

---

[4]This case was orally argued on January 19, 2022. Thus, Shakespeare's pending motion to set this matter for oral argument is **denied** as moot.

Shakespeare was charged in tribal court[5] with sexually assaulting a fourteen-year-old relative. He pleaded guilty to Sexual Assault – Second Offense in tribal court and was sentenced to 365 days' confinement.

In July 2020, based on the events underlying Shakespeare's tribal court conviction for sexual assault, a federal grand jury charged Shakespeare with two counts of aggravated sexual abuse of a minor. Shakespeare ultimately pleaded guilty, pursuant to a plea agreement, to one count of abusive sexual contact with a minor, in violation of 18 U.S.C. §§ 1153 and 2243(a)(5) (the "2020 conviction"). In his plea agreement and guilty plea, Shakespeare admitted "he did knowingly engage in and cause, or attempt to engage in and cause, sexual contact, that being the intentional touching, either directly or through the clothing, of the genitalia, groin, inner thigh, or buttocks of" the fourteen-year-old victim. Shakespeare's plea agreement contained a binding provision, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that he would receive a sentence between 240 and 360 months' imprisonment. The district court accepted Shakespeare's Rule 11(c)(1)(C) plea and set a sentencing hearing for February 2021.

In December 2020, the Probation Office filed a petition to revoke Shakespeare's supervised release on the 2018 conviction. The petition alleged Shakespeare committed a new sex offense against a minor, violating the release

---

[5]Shakespeare is a member of the Northern Arapaho Tribe and, at all relevant times, was a resident of Arapaho, Wyoming, a community located within the Wind River Indian Reservation.

condition requiring him not to commit another federal, state, or local crime. The

petition also alleged that, because Shakespeare committed a new sex offense

while subject to registration under SORNA, the court was required to revoke his

supervised release and impose a five-year minimum revocation sentence under

§ 3583(k).[6]

In February 2021, the district court held a combined sentencing hearing on

the 2020 conviction and revocation hearing on the 2018 conviction. With respect

to the 2020 conviction, the district court sentenced Shakespeare to 293 months in

prison, at the top of Shakespeare's advisory Guidelines range. The district court

explained Shakespeare had a "documented history as a sexual predator of minor

children as evidenced by the commission of the instant [rape] less than two

months following his release from federal prison for another sex-offense

conviction." The court concluded a "lengthy sentence" was "needed in order to

protect the public from his future potential conduct" and "necessary given the

---

[6]In relevant part, § 3583(k) specifies that if a defendant required to register under SORNA commits one of several enumerated sex offenses, the district court must revoke his supervised release and require him to serve a minimum term of imprisonment of at least five years:

> If a defendant required to register under [SORNA] commits any criminal offense under chapter 109A, [encompassing 18 U.S.C. §§ 2241 to 2248] . . . , for which imprisonment for a term longer than 1 year can be imposed, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment . . . . Such term shall be not less than 5 years.

18 U.S.C. § 3583(k).

prior sentence was insufficient to adequately deter the conduct that he engaged in." After imposing sentence, the district court recessed the now-completed proceedings on the 2020 conviction.

The district court then turned to the revocation petition on the 2018 conviction. At the outset, Shakespeare confirmed he intended to admit the violation, with his counsel noting "the Court could really take judicial notice of the fact that [Shakespeare] has pled guilty in the other docket to satisfy the violation of supervised release." The district court insisted, however, on advising Shakespeare as to the rights he would be waiving if he admitted to violating the terms of his supervised release. R. Vol. III at 37 ("All right. And I would take judicial notice for the factual basis. Nonetheless, I will go through and advise him as to his rights and what he would be waiving if he admits to committing that violation."). The district court confirmed, after placing Shakespeare under oath and confirming his competency and the voluntariness of his admissions, that Shakespeare understood the alleged violation. The district court further advised Shakespeare, among other things, that he (i) faced "a mandatory minimum sentence of five years" under § 3583(k); and (ii) had the right to deny the petition and proceed to both a preliminary hearing and hearing on the merits, at both of which the government would carry the burden of proof. Having been advised of his rights, Shakespeare admitted the alleged supervised-release violation, and the district court took judicial notice of Shakespeare's guilty plea as a factual basis

for the admission.  At no point did Shakespeare raise an objection under the Fifth

or Sixth Amendment or mention *Haymond*.  The district court ruled that "a

five-year term [was] sufficient and appropriate in this matter consecutive to the

sentence in [the 2020 conviction]."

## III.  DISCUSSION

### A.  Standard of Review

This Court generally reviews a "district court's decision to revoke

supervised release for abuse of discretion."  *United States v. LeCompte*, 800 F.3d

1209, 1215 (10th Cir. 2015) (quotation omitted).  Underlying questions of law are

ordinarily reviewed de novo.  *Id.*  Because, however, Shakespeare failed to raise

relevant objections in the district court, his claim is reviewed only for plain error.

*United States v. Penn*, 601 F.3d 1007, 1009 (10th Cir. 2010); Fed. R. Crim. P.

52(b).  Importantly, it is Shakespeare's burden to establish the existence of plain

error, *United States v. Courtney*, 816 F.3d 681, 683 (10th Cir. 2016), and that

burden is a heavy one not often satisfied, *United States v. Crowe*, 735 F.3d 1229,

1242 (10th Cir. 2013).  To show plain error, Shakespeare must demonstrate (1)

"an error" (2) that is "clear or obvious, rather than subject to reasonable dispute,"

(3) "affected [his] substantial rights," and (4) "seriously affect[s] the fairness,

integrity or public reputation of judicial proceedings."  *Puckett v. United States*,

556 U.S. 129, 135 (2009) (quotation omitted).  "An error is plain if it is clear or

obvious under current, well-settled law.  In general, for an error to be contrary to

-8-

well-settled law, either the Supreme Court or this court must have addressed the issue." *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) (quotation omitted); *see also United States v. Finnesy*, 953 F.3d 675, 696-97 (10th Cir. 2020) (emphasizing the rigorousness of the plainness prong of the plain error test).

## B.  Analysis

Shakespeare's claim on appeal is that § 3583(k) identifies, in every possible fact situation, a separate substantive crime and, therefore, no penalty can be imposed under that provision unless initiated by indictment and tried to a jury, with jeopardy attaching.  The exclusive basis for this claim is a grand interpretation of Justice Breyer's opinion concurring in the judgment in *Haymond*. A close reading of Justice Breyer's opinion, however, demonstrates the as-applied analysis set out therein is not applicable to Shakespeare.  That is, the three factors, which considered in combination led Justice Breyer to conclude § 3583(k) was unconstitutional as applied to Haymond, are not present here.  Thus, Shakespeare has not shown error in the district court's application of § 3583(k) to him, let alone plain error.

Haymond, an individual previously convicted of possession of child pornography, was found in possession of what appeared to be child pornography while serving his term of supervised release.  *Haymond*, 139 S. Ct. at 2374 (plurality opinion).  Rather than bringing charges relating to those new images,

-9-

the government exclusively sought to revoke Haymond's supervised release. *See id.* (plurality opinion). At a revocation hearing, the district court found, utilizing the preponderance-of-the-evidence standard, that Haymond possessed thirteen images of child pornography. *Id.* (plurality opinion). Applying § 3583(k), the district court revoked Haymond's supervised release and sentenced him to a mandatory minimum five-year term of imprisonment. *Id.* at 2375 (plurality opinion). Absent the requirements of § 3583(k), the district court would have had the discretion, under 18 U.S.C. § 3583(e)(3), to decline to revoke Haymond's supervised release. And, even assuming the district court chose to exercise its discretion to revoke Haymond's term of supervised release, § 3583(e)(3) would have empowered the district court to sentence Haymond to a term of imprisonment at any point between zero and two years. *Id.* at 2374 (plurality opinion).

On direct appeal, this court remanded the matter to the district court to utilize the revocation procedures set out in § 3583(e)(3). *United States v. Haymond*, 869 F.3d 1153, 1156, 1168 (10th Cir. 2017), *vacated and remanded*, *Haymond*, 139 S. Ct. at 2385 (plurality opinion). We held that "§ 3583(k) is unconstitutional because it changes the mandatory sentencing range to which a defendant may be subjected, based on facts found by a judge, not by a jury, and because it punishes defendants for subsequent conduct rather than for the original crime of conviction." *Id.* at 1160. To remedy this perceived problem, we held

that the "last two sentences of § 3583(k) are unconstitutional and unenforceable" because, read together, they "violate[] the Constitution by increasing the term of imprisonment authorized by statute based on facts found by a judge, not by a jury beyond a reasonable doubt, and by tying the available punishment to subsequent conduct, rather than the original crime of conviction." *Id.* at 1167-68. Accordingly, we vacated and remanded to the district court with instructions to resentence Haymond "under § 3583(e)(3) without consideration of § 3583(k)'s mandatory minimum sentence provision or its increased penalties for certain subsequent conduct." *Id.* at 1168.

The Supreme Court granted certiorari and, after plenary review, issued an opinion vacating this court's judgment and remanding for further proceedings on the remedy question. The Court concluded, in a splintered opinion, that as applied to Haymond, § 3583(k) violated his constitutional right to a jury trial. Four Justices concluded that the application of § 3583(k)'s mandatory minimum five-year term of imprisonment based on judicial factfinding, rather than a jury verdict, violated the Sixth Amendment. *Haymond*, 139 S. Ct. at 2373, 2375-76, 2378 (plurality opinion). In so doing, the plurality appeared to cast doubt on the assumption that any aspect of revocation proceedings, even those conducted pursuant to § 3583(e)(3), would be exempt from the requirements of the jury-trial rights set out in the Fifth and Sixth Amendments. *See id.* at 2385 (Breyer, J., concurring); *id.* at 2386-91 (Alito, J., dissenting). *But see id.* at 2382 n.7

-11-

(plurality opinion) (disclaiming any intent to "pass judgment . . . on § 3583(e)'s consistency with *Apprendi*").  Four other Justices concluded that the application of § 3583(k)'s mandatory minimum five-year term based on judicial factfinding was constitutionally permissible.  *Id.* at 2391 (Alito, J., dissenting) (likening supervised release to the "old federal parole system" and noting parolees did not have a right to a jury trial or confrontation, a due-process entitlement to proof beyond a reasonable doubt, or protection against double jeopardy).

Justice Breyer supplied the dispositive vote in an opinion concurring in the judgment.  *Id.* at 2385-86 (Breyer, J., concurring in the judgment).  He agreed "with much of the dissent," specifically including that the Court should "not transplant" jury-trial-right decisions such as *Alleyne* and *Apprendi* into "the supervised-release context."  *Id.* 2385 (Breyer, J., concurring in the judgment).  Nevertheless, he concluded § 3583(k) violated a defendant's right to a jury trial.  *Id.* at 2386 (Breyer, J., concurring in the judgment).  Justice Breyer reasoned that "three aspects of" § 3583(k), "considered in combination," led to this conclusion.  *Id.* at 2386 (Breyer, J., concurring in the judgment).

> *First*, § 3583(k) applies only when a defendant commits a discrete set of federal criminal offenses specified in [that particular provision.] *Second*, § 3583(k) takes away the [trial] judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long.  *Third*, § 3583(k) limits the judge's discretion in a particular manner: by imposing a mandatory minimum term of imprisonment of "not less than 5 years" upon a judge's finding that a defendant has "committed any" listed "criminal offense."

*Id.* (Breyer, J., concurring in the judgment) (quoting § 3583(k)) (alteration omitted). "Taken together, these features of § 3583(k) more closely resemble the punishment of new criminal offenses, but without granting a defendant the rights, including the jury right, that attend a new criminal prosecution." *Id.* (Breyer, J., concurring in the judgment).

As to the appropriate remedy for the different sets of constitutional infirmities identified by the plurality and concurrence, the Court remanded the matter to this court for further proceedings. The government had argued this court's remedy, which simply invalidated the last two sentences of § 3583(k), swept "too broadly" and "any constitutional infirmity [could] be cured simply by requiring juries acting under the reasonable doubt standard, rather than judges proceeding under the preponderance of the evidence standard, to find the facts necessary to trigger § 3583(k)'s mandatory minimum." *Id.* at 2385 (plurality opinion). The Supreme Court "decline[d] to tangle with the parties' competing remedial arguments" because this court "did not address" them and because "it appear[ed] the government did not even discuss the possibility of empaneling a jury in its brief to [the Tenth Circuit]." *Id.* (plurality opinion); *see also id.* at 2386 (Breyer, J., concurring in the judgment) (agreeing that the question of the appropriate remedy should be remanded to this court). Thus, the Court vacated this court's judgment and remanded for this court "to address the government's remedial argument in the first instance, including any question concerning

-13-

whether that argument was adequately preserved in this case." *Id.* at 2385

(plurality opinion); *see also id.* at 2386 (Breyer, J., concurring in the judgment).

On remand, the parties notified this court that Haymond had already been

resentenced to time served, pursuant to the provisions of § 3583(e), and released

from custody. *United States v. Haymond*, 935 F.3d 1059, 1064 (10th Cir. 2019).

The government represented it would not seek a jury trial in an effort to

reincarcerate Haymond under the provisions of § 3583(k) even if this court

adopted its remedial argument. *Id.* Accordingly, this court determined

intervening developments rendered Haymond's appeal moot and dismissed it. *Id.*

Shakespeare is not entitled to relief under the analysis set out in Justice

Breyer's opinion concurring in the judgment.[7] *Haymond* resolved an as-applied

---

[7]Unsurprisingly, Shakespeare does not argue he is entitled to relief pursuant to *Haymond*'s plurality opinion. Although the *Haymond* plurality based its decision on *Alleyne*, it made clear *Alleyne* sits comfortably within the *Apprendi* pantheon. 139 S. Ct. at 2377-78 (plurality opinion). Importantly, the plurality recognized the *Apprendi* line does not apply to obligate the government to "prove to a jury the fact of a defendant's prior conviction." *Id.* at 2377 n.3 (plurality opinion) (citing to *Almendarez-Torres*). Likewise, the plurality noted that *Apprendi* does not apply to facts "admitted by the defendant." *Id.* at 2377 (plurality opinion); *see also Blakely v. Washington*, 542 U.S. 296, 303-04 (2004) (recognizing the right to a jury trial applied in the *Apprendi* line does not extend to facts "admitted by the defendant"); *Cunningham v. California*, 549 U.S. 270, 274-75 (2007) (holding that the "jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by the jury or admitted by the defendant"); *United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005) ("The Sixth Amendment rule announced in *Apprendi* . . . is inapplicable where a sentence is determined based on admitted facts."). Nor could Shakespeare prevail on his double jeopardy claim under the rule set out in the plurality opinion. That

(continued...)

challenge to § 3583(k), meaning the particular background facts are exceedingly

relevant.  *See* 935 F.3d at 1063 (opinion on remand from Supreme Court) ("The

Supreme Court ultimately determined that, as applied to Haymond, § 3583(k)

violated the Fifth and Sixth Amendments."); *see also United States v. Childs*, 17

F.4th 790, 792 (8th Cir. 2021) (holding that *Haymond* involved an as-applied

constitutional challenge to § 3583(k)); *United States v. Ka*, 982 F.3d 219, 222

(4th Cir. 2020) (same); *United States v. Walker*, 849 F. App'x 822, 827 (11th Cir.

2021) (holding that Justice Breyer "joined the plurality in finding § 3583(k)

unconstitutional as applied").  Shakespeare does not cite to any authority

supporting the assertion Justice Breyer's as-applied analysis would extend to

§ 3583(k) revocation proceedings following a knowing and intelligent guilty plea

to a qualifying offense.  To be more precise, Shakespeare does not cite to any

precedent indicating Justice Breyer's as-applied analysis renders § 3583(k)

unconstitutional as applied to a situation in which one of his three key factors is

absent, i.e., in which the mandatory revocation sentence was not based "upon a

---

[7](...continued)
is true because the plurality recognized and reaffirmed the holding from *Johnson v. United States*, 529 U.S. 694, 700 (2000), that "supervised release punishments arise from and are 'treated as part of the penalty for the initial offense.'" *Haymond*, 139 S. Ct. at 2379-80 (alterations omitted).  And, as *Johnson* makes clear, when "the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense. Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties."  529 U.S. at 700.

judge's finding that a defendant has committed any listed criminal offense." *Haymond*, 139 S. Ct. at 2386 (Breyer, J., concurring in the judgment) (quotation omitted).

As far as this court can tell, the only court to encounter this question remanded the issue to the district court to consider the question in the first instance. *United States v. Savarese*, 842 F. App'x 448, 452 (11th Cir. 2021). With one critical distinction, the background facts in *Savarese* are materially identical to the facts in this case. *See Savarese*, 842 F. App'x at 449. The distinction is that during his revocation proceedings, Savarese raised the very issue the Supreme Court eventually took up in *Haymond*. *Id.* at 450. After a colloquy in which Savarese indicated he would, nevertheless, admit the violations of his supervised release consistent with his prior guilty plea to a triggering offense, the district court revoked Savarese's supervised release and imposed a § 3583(k) minimum-mandatory five-year term of imprisonment. *Id.* Between the filing of Savarese's notice of appeal and appellate briefing, the Supreme Court issued its "fractured" decision in *Haymond*. *Savarese*, 842 F. App'x at 451. Because the district court resolved Savarese's arguments without the benefit of *Haymond*, the Eleventh Circuit, out of an abundance of caution, remanded the matter to the district court to "decide in the first instance how *Haymond* applies to Savarese." *Id.* at 452; *see also id.* at 452-53 (Brasher, J., concurring).

-16-

The decision to remand in *Savarese* was not unanimous.  The *Savarese* dissent concluded remand would be futile because it was undeniable a person in Savarese's—and Shakespeare's—position could not obtain relief under Justice Breyer's concurrence.  *Id.* at 456-58 (Luck, J. dissenting).  The *Savarese* dissent noted that Justice Breyer's concurrence made clear that it was the conjunction of three important facts that rendered § 3583(k) unconstitutional as applied to Haymond.  *Id.* at 456 (Luck, J., dissenting) ("Savarese's case is missing one of the three aspects that, 'considered in combination' and '[t]aken together,' made the section 3583(k) five-year mandatory sentence in *Haymond* unconstitutional." (quoting *Haymond*, 139 S. Ct. 2386 (Breyer, J. concurring in the judgment)) (alterations in original)); *see also United States v. Badgett*, 957 F.3d 536, 540 n.15 (5th Cir. 2020) (observing that Justice Breyer listed the "three features" of § 3583(k) that were constitutionally "problematic *in conjunction*").[8]  That key missing element was that the district court's exercise of discretion was limited by

---

[8]For similar reasons, the Third Circuit held that one of these factors was insufficient in itself to render a related revocation provision unconstitutional under Justice Breyer's *Haymond* analysis "because he emphasized that the three factors he applied are to be considered 'in combination.'"  *United States v. Seighman*, 966 F.3d 237, 243-44 (3d Cir. 2020) (quoting *Haymond*, 139 S. Ct. at 2386 (Breyer, J., concurring in the judgment)).  Several other circuits, including this court, have likewise rejected challenges to that revocation provision, 18 U.S.C. § 3583(g), under Justice Breyer's conjunctive three-factor approach.  *See United States v. Ewing*, 829 F. App'x 325, 330 (10th Cir. 2020) (unpublished disposition cited solely for its persuasive value); *see also, e.g., United States v. Garner*, 969 F.3d 550, 553 (5th Cir. 2020); *United States v. Coston*, 964 F.3d 289, 295-96 (4th Cir. 2020).

factual findings it made utilizing the preponderance standard.  *Savarese*, 842 F.

App'x at 456 (Luck, J., dissenting)  When, however, a defendant has pleaded

guilty, or been found guilty by a jury beyond a reasonable doubt, limits on the

district court's discretion are not tied to a judge's findings under a preponderance

standard.  *Id.* (Luck, J. dissenting).[9]

Consistent with the authorities discussed above, this court concludes Justice

Breyer's as-applied *Haymond* analysis does not apply unless each of the three

critical factors identified in his concurrence are present.  Because one of those

factors is absent here—the imposition of a mandatory sentence based on a trial

court's finding of the existence of a triggering crime under the preponderance

---

[9]The *Savarese* dissent offered two additional reasons Justice Breyer's as-applied analysis did not apply to Savarese.  First, because Savarese pleaded guilty to committing an offense that triggered § 3583(k), he "waived his jury-trial rights."  *Id.* at 457 (Luck, J., dissenting).  The dissent noted that Justice Breyer specifically reasoned that if all three of his identified aspects were present, this would lead Justice Breyer to conclude "the five-year mandatory sentence was 'more like punishment for a new offense *to which the jury right would typically attach*.'"  *Id.* (Luck, J., dissenting) (emphasis added) (citing *Haymond*, 139 S. Ct. at 2386 (Breyer, J., concurring in the judgment)).  Because Savarese, like Shakespeare, pleaded guilty to the new substantive offense before that offense was used to revoke his supervised release, he waived his right to the jury trial on whether he violated the terms of his supervised release.  *Id.* at 457-58.  Second, Justice Breyer's concurrence did not discuss, let alone purport to overrule, *Almendarez-Torres*, 523 U.S. at 247, which exempted from the rule in *Apprendi* the fact that a defendant has been convicted of a prior offense.  *Savarese*, 842 F. App'x at 458; *see also United States v. Hanson*, 936 F.3d 876, 887 n.10 (9th Cir. 2019) (holding that it was unnecessary to "consider the impact of" *Haymond* because "a jury found that [the defendant] had committed the offense [underlying the § 3583(k) revocation] beyond a reasonable doubt").

standard—the district court did not err, much less plainly err, in applying the provisions of § 3583(k) to the revocation of Shakespeare's supervised release.

Although the above conclusion is entirely sufficient to resolve Shakespeare's appeal, it is worth noting that Shakespeare still would not be entitled to prevail on appeal even if he had convinced this court that Justice Breyer's concurrence renders § 3583(k) unconstitutional as applied to any supervisee who did not receive a full panoply of Fifth and Sixth Amendment rights in the revocation proceeding.  That is because, so construed, it is far from plain, clear, and obvious that Justice Breyer's concurrence would amount to the narrowest decisional basis in *Haymond*.  *See Marks v. United States*, 430 U.S. 188, 193 (1977) (holding, in the context of fractured Supreme Court opinions, that of the various opinions concurring in the judgment, the one that sets out the narrowest decisional basis represents the opinion of the Court).

In support of the unexplored assumption that Justice Breyer's concurring opinion, no matter how broadly construed, controls the disposition of his appeal, Shakespeare merely cites to this court's decision in *United States v. Salazar*, 987 F.3d 1248, 1259 (10th Cir. 2021).[10]  *Salazar* did hold, consistent with several other circuits, that, under *Marks*, Justice Breyer's concurring opinion is the narrowest ground supporting the judgment in *Haymond* and therefore represents

---

[10]*See* Appellant's Opening Br. at 9 (citing *Salazar* for the following proposition: "Justice Breyer's concurrence is the narrowest ground supporting the judgment and therefore 'represents the court's holding.'").

*Haymond*'s holding.  *Id.*; *see also generally Childs*, 17 F.4th at 791-92; *United States v. Henderson*, 998 F.3d 1071, 1072, 1076-77 (9th Cir. 2021); *United States v. Doka*, 955 F.3d 290, 296 (2d Cir. 2020).  Context, however, is key.  In *Salazar*, as well as each of the other cases cited above, the question was whether the decision in *Haymond* extended beyond § 3583(k) to render "regular" revocation proceedings under § 3583(e) subject to the *Apprendi* line of cases.  *Salazar*, 987 F.3d at 1261; *Childs*, 17 F.4th at 791-92; *Henderson*, 998 F.3d at 1076; *Doka*, 955 F.3d at 292.  On this specific point, Justice Breyer's opinion appears to be decided on narrower grounds than the plurality's.  Indeed, as set out above in describing the three *Haymond* opinions, concern about this very question appears to have motivated Justice Breyer's refusal to join the *Haymond* plurality.  *See Haymond*, 139 S. Ct. at 2385 (Breyer, J., concurring in the judgment).

Shakespeare's grand reading of Justice Breyer's concurring opinion would, however, implicate a different and far more esoteric break between the plurality and Justice Breyer.  As explained above, the *Haymond* plurality unequivocally holds that the constitutional rights set forth in the *Apprendi* line govern the factual determination of whether a supervisee has committed one of the triggering crimes listed in § 3583(k).  *See supra* n.7.  On the other hand, as posited by Shakespeare, Justice Breyer's concurring opinion would treat § 3583(k) as a separate criminal statute in every circumstance, subject to a potentially much wider panoply of procedural and substantive rights than *Apprendi* guarantees.  So

conceptualized, it is arguable that the approach to § 3583(k) set out in the plurality is the narrowest decisional ground. That is, according to the plurality, the jury-trial rights set out in the *Apprendi* line only apply to a subset of § 3583(k) revocations: when the supervisee has not been convicted of committing a triggering crime in a separate criminal proceeding and does not admit to having committed such a crime. *See Haymond*, 139 S. Ct. at 2377 & n.3. Shakespeare's interpretation of Justice Breyer's concurrence would seem to go far beyond this, extending jury-trial rights outside of the subset of cases identified by the plurality.

This court has "clarified that a concurring opinion in a splintered Supreme Court decision is the narrowest under *Marks*, and thus produces a determinate holding, when it is a logical subset of the other opinion(s) concurring in the judgment." *United States v. Guillen*, 995 F.3d 1095, 1114 (10th Cir. 2021) (quotation omitted). As to the narrow question of § 3583(k), the relief provided by the plurality—the application of *Apprendi*'s jury-trial rights to contested questions of fact not involving a prior criminal conviction—arguably amounts to a logical subset of the relief that would be provided by the grand reading of Justice Breyer's concurring opinion advocated by Shakespeare. *See id.* ("If the instances in which a concurring opinion would reach the same result as the splintered decision in future cases form a logical subset of the instances in which the other concurring opinion(s) would reach the same result, that opinion

-21-

controls."). That is, providing supervisees with *Apprendi* rights in the context of revocation proceedings (i.e., the plurality approach) appears to be a logical subset of treating § 3583(k) as, invariably, a separate crime, with all the attendant constitutional protections afforded any criminal defendant alleged to have committed an indictable federal offense (i.e., Shakespeare's expansive reading of Justice Breyer's concurrence).

Shakespeare has failed to brief this analytically complex question. Nor has he briefed how this court should go about interpreting § 3583(k) should *Marks* not resolve this question.[11] Furthermore, no court of appeals has addressed these questions because all have treated the applicability of Justice Breyer's as-applied analysis as rising or falling based on the presence or absence of the three factors identified in his separate opinion. Thus, even assuming Shakespeare correctly interprets Justice Breyer's opinion as treating § 3583(k) as a separate crime requiring full jury-trial rights even if one of Justice Breyer's three factors is missing, an argument we reject for those reasons set out above, Shakespeare has still failed to carry his burden of demonstrating the district court committed an error that was "clear or obvious under current, well-settled law" by applying the

---

[11]*See Guillen*, 995 F.3d at 1115 ("Of course, it is not always possible to identify the opinion that is a logical subset of the other concurring opinion(s). Sometimes there is no discernable implicit consensus or common denominator among the Justices who support the Court's judgment, making *Marks* an exercise in chasing the wind." (citations and quotations omitted)).

five-year mandatory sentence set out in § 3583(k) upon revoking Shakespeare's

term of supervised release. *DeChristopher*, 695 F.3d at 1091.

## IV.  CONCLUSION

For those reasons set out above, the judgment and sentence entered by the

United States District Court for the District of Wyoming is hereby **AFFIRMED**.